The argument is 1914-12, Cook v. Boston Scientific. Good morning, Your Honor. This is a little thinner, the case. It is, Your Honor. And it's just an appeal, not a cross-appeal, right? Correct. May it please the Court. We raised two errors here, one regarding claim construction and one regarding the Board's misunderstanding of our obvious miscombination. I'm going to start with the claim construction issue, and in particular the party's dispute about whether the Board's construction required as part of it a sole causation or a loan causation requirement, despite not using the word sole or loan. Yeah, that's part of my problem. So where in that Board decision do you think it actually requires that? Because they never use those words, and it didn't seem to jump out at me in reading the Board decision. That's correct, Your Honor. They didn't use those words, but let me explain why we believe it was imposed as part of the construction. Point me to where in the opinion. Yes, Your Honor. Turning first to Appendix Page 17. And it's the last sentence trailing over to Page 18. The Board says, it is the radially outward movement of the arms at a link that must cause the control wire to release from the clip in accordance with Claim 1. So here the Board's saying, it's the radial movement that must cause the control wire to be released. Not that it's a cause, not that it in connection with other steps will lead to, but know that it must cause the control wire to be released. That's a sole causation requirement despite not using the word sole. Well, I mean that was in response to your argument relating to the timing of the release. And there what the Board said is that it's not about the timing, it's about what does it. That's correct, Your Honor. And here very clearly the Board is saying that the radial outward movement of the link arms must cause the control wire to be released. And that is tantamount to a sole causation requirement. If there were any doubt remaining, it's dispelled by looking at how the Board applied its construction. And so keep in mind the context of the COMIA reference. It's a three-step process for releasing the control wire from the clip. Step one, which is the step that we focus on, Your Honors, is you pull back on the control wire. The link arms radially expand. Dr. Nicosia testified that that's an absolute necessity to release the control wire from the clip. Why? Because only then is the clip locked within the holder 21, which means that only then can you push the control wire forward in step number 2 to separate the holder 21 from the guide member 16. And only then can you proceed to the step 3 to move the endoscope sideways to complete the separation of the control wire from the clip. So that's step one. It's critical. It's an absolute necessity. And so when you look at what the Board did in applying its construction, it skipped over that, went right to step number 3, and focused on moving the endoscope sideways because that is the action, according to the Board, that actually releases the control wire from the clip. And this is made even more clear when looking at how the Board applied Cook's construction. So the Board criticized Cook's construction and said that virtually, and this is at Appendix 18, the Board said virtually any step would be covered by Cook's construction, no matter how far removed. And so surely step one in the process, just two steps removed from the final step of moving the endoscope sideways, would be covered by Cook's construction. But no, again, the Board, in applying its construction, again jumped right to that step number 3. Well, the whole point was the Board said that your construction would cover such a huge panoply of things, and that Configure 2, which is very specific language, has to be, requires a structure designed to perform the function, not just, you know, a structure that's capable of performing the function. And so why isn't that correct? And why do we need to even go beyond the extrinsic evidence to reach that conclusion? We don't disagree with that, Your Honor. The language does require that the configuration language is configured to release the control wire from the clip. That's exactly how COMIA operates. When its link arms radially expand, it's only in that configuration that the control wire... So now you're saying that you're not complaining about the construction and want your construction. You're just saying that under their construction, you think COMIA still does that. No, Your Honor. We are complaining about the Board's construction because the Board imposed not what you're raising, just it has to be configured to cause a release. It required as part of its construction, as made clear by how it applied to construction, that radial expansion of link arms must cause the release of the control wire from the clip. And that's what's wrong. So in COMIA... And so what you're arguing is that they're saying that that alone has to cause the release. Whereas your theory is that the three steps here are combined to cause the release and that that's sufficient. That's correct, Your Honor. So looking at the claim language, nothing in the claim language requires that the radial expansion of link arms alone causes the control wire to be released. That's the bone of contention. It requires a released configuration, which doesn't itself require release of the control wire at all. It's a configuration of the link that's claimed, not a configuration of the control wire relative to the clip. But it has to be a structure, right? A structure that is configured to cause the release. So how can a structure be three or four different things that ultimately allows the release? The structure is configured to cause... configured to release the control wire from the clip. And the structure in COMIA meets that because when the radial expansion of link arms is an absolute necessity to release the control wire from the clip. It doesn't do it by itself, but it, in combination with the subsequent steps, is what causes the control wire to be released from the clip. In the released configuration of Claim 1, the link only needs to be configured to release the clip. It doesn't actually have to release the clip. Now looking at Cook's allows or leads to construction, it's intended to reflect that the radial expansion of link arms is a necessity to release the control wire from the clip. And there's a direct relationship between the two, but there's no requirement in the claim that it be sufficient by itself to release the control wire from the clip. And applying that construction, COMIA meets the link arm limitation. I'm going to turn to the second issue, which is the board's misunderstanding of our obviousness combination. Cook explained in the petition that in the combination... And this would be an alternative basis, right? That's correct. The claims in dispute are all covered by both of these theories. That's correct. In the combination, the control wire is released from the clip at Step 1 in the process. So as you pull back on the control wire, the link arms radially expand, and simultaneous with that, the control wire is released from the clip. As a result, compared to COMIA, there's no need to push the control wire forward and sideways in order to separate the control wire from the clip, because it already occurs at Step 1. Dr. Nicosia testified that there's an advantage to that. Less deployment steps, shorter procedure time, and you eliminate the possibility in that Step 3 of getting the control wire caught or snagged on the clip as you're trying to move it sideways away from the clip. The board mistakenly took this motivation to combine to mean that the control wire is not pushed forward for any reason. Well, isn't that what you said in your IPR petition? That it eliminates pushing the control wire? No, Your Honor, that is not what we said. What we said was it eliminates pushing the control wire forward and sideways to separate the control wire from the clip. That's something that's distinct from pushing the control wire forward in COMIA Step 2 to separate the clip from the delivery device. So in the combination, just as in COMIA, you still need to proceed to Step 2, because you still need to separate the clip from the delivery device. And Cook's discussion in the petition was in the context of Claim 1, and there's no requirement in Claim 1 that the clip be separated from the delivery device. So not surprisingly, we didn't go into great detail in that regard. But elsewhere in the petition, we did in fact make clear, Your Honors, that the control wire in the combination is still pushed forward to release the clip. Really what the board said is they just didn't think you gave them enough evidence to explain your theory. And at that point, I mean, just that you may have failed to provide sufficient evidence to the board is not a grounds for us to reverse. The board specifically said you may have had some good ideas about this, or your expert may have some good ideas, but you failed to explain it. Why isn't that enough? The board did say that, and the reason why that's not enough is because it was all based on the board's misunderstanding of our obviousness in the combination as eliminating the step of pushing the control wire forward. The board characterized that as an essential step, and then criticized Cook for not explaining in the petition how or why that purportedly essential step would be eliminated. Well, of course, there's no explanation because the step's not eliminated. Well, how would that supposed misunderstanding impact, though, the separate finding that you failed to show how Crockard's jaws would interact with Comia's clip? Well, it's all one and the same, Your Honor, because it all relates to the combination of how Crockard's jaws would be combined with Comia's clip. And we talked about the misunderstanding of the control wire being pushed forward. The board statement that you're referring to, Your Honors, talks about how Crockard's jaws would be combined with the proximal end of the clip. And the board's statement there refers to a connection between Crockard's jaws and the clip as reflected in Crockard, how Crockard's jaws connect to Crockard's clip. But, again, this is a misunderstanding because Cook never proposed to combine Crockard and Comia in that fashion. Instead, in the combination, and this is made very clear in the proceeding, in the combination, the Crockard's jaws are wrapped around the proximal end of the clip like a chain link, similar to how Comia's hook member wraps around the end of Comia's clip. And so it all is reflecting the board's fundamental misunderstanding of Cook's obvious discombination, which it didn't understand it at the outset. And when you look at the final written decision, the board considered Cook's reply evidence, which did make clear that the control wire is pushed forward, but disregarded it in each turn because of what it understood, or I should say misunderstood, Cook to be saying in the petition. So unless there are any other questions, I'll reserve my remaining time. Your Honors, the board correctly construed the link limitation of claim one, which requires that the link coupling the control wire to the clip be movable. And it must be movable between two configurations, a coupled configuration, in which the control wire is coupled to the clip, and a release configuration, in which it's not coupled to the clip, but it's now released. There's no error in the board's construction of that term. The board also correctly found that in the Comia reference, the movement of those intersecting portions, or offset portions, I should say, 11D, doesn't cause the release of Comia's clip. Comia, as several of these references are, is one of these Olympus endoclip references, and that does not allow for reversible operation. But you would agree that the first step is necessary to get to the third step, right? I do not agree, Your Honor. The ability there, Comia's clip can be moved out of the sheath and moved off, because remember the way this works is you push the clip distally. Did the board find that the first step was not necessary? What the board said is that there's no causation. Yeah, yeah, but I understand. But did the board find that the first step wasn't necessary to perform the third step? I think in finding no causation, that's the implication of that. In other words, maybe this will help to explain. When you pull in Comia the clip back into the hole 16, those intersecting portions, 11, I'm sorry, offset portions, 11B, what they do is they move, and what that does, they move radially, what that does is that causes the jaws of the clip in Comia to close. It doesn't have anything to do with release. The clip is still firmly seated on the hook, on Comia's hook at that point. And in answering, to answer your question, that's the case both before the clip is pulled back into hole 16A, and even if it wasn't pulled back and simply moved out and deployed. Now that's not the way that the operation was done. So the theory is that the way this is designed, the first step has to be performed before you get to the third step, but the first step doesn't have any functional relationship to the release. That's correct. That's correct. That you could, one wouldn't do this. The operator wouldn't push the open clip out, but pulling it back and causing the clip to close in hole 16 has no functional relationship to release at all. The clip, both before it's pulled into the hole and after it's pulled into the hole, is firmly seated on that control wire. It's not in a released configuration because the clip is still attached to the control wire. Let me turn to, unless there are further questions on that, I would turn to the obviousness argument and the motivation argument. The Board's conclusion that combining Procord or ProCard's JAWS with the COMIA device wouldn't be something that a person of ordinary skill would do is supported by substantial evidence, starting with... Was there a misunderstanding of Cook's argument by the Board? I don't think there was any misunderstanding so much as the petition doesn't clearly set forth exactly what Cook said was the combination would look like. Cook never said, for example, in the petition, how Procord's JAWS interacted with COMIA's clip. They didn't say it. That came about later. They added a theory later in the proceeding. But Cook did say in the petition that making this modification would eliminate the step of pushing forward. That's not the only thing they said, but it is one of the things they said. And it is true, and our expert, Dr. Vida Kunis, explained the modification wouldn't eliminate the step of moving forward. And beyond that... It just moves forward in a different way. They said two different things in the petition, and so that created some confusion, and it was unclear what exactly their theory was. They said it eliminates the step of moving forward, and they said it eliminates the step of moving forward and jiggling or moving the device sideways to cause the clip to be released. So they said both of those things without explaining what it was that was the simplification. In any event, what our expert said and what the board agreed is there would be no simplification. You'd still have to move the control wire forward to cause the clip to come off of the device, and there would be a number of problems with that design, including how would these JAWS, which we're not talking about. ProCard is not a hemostatic clip device. It's an aneurysm clip. And as the board found, the way ProCard's JAWS work is rather than serve as a hook like the distal end of Comia's control wire does to hold the clip, those ProCard JAWS pinch the clip, so they're sort of in line or in the same plane as the clip, and they squeeze the end of the clip. That's very different from what we see going on in Comia, which is a clip device. And the board said there's no explanation for how this all would work together. Later on reply, the explanation changed, or the theory changed to be that ProCard's JAWS would interlock the clip. But there is substantial evidence both from Dr. Viticunas and I believe from an admission from Dr. Nicosia that now if you have this interlocking arrangement, rather than Comia's clip sitting firmly as it did in the original design in the hook, that a person of ordinary skill wouldn't do that. That design, the interlocking design that's proposed on reply, was proposed for the modification, would result in much more give between the clip. How clear would it have to be from the record that there was a misunderstanding by the board, as opposed to the board actually understanding and finding they didn't satisfy their burden of proving their point? How satisfied would we have to be that there was a misunderstanding before we could reverse? Well, I think you'd have to be very satisfied, particularly in view of the fact that the idea that pushing the control wire forward was the step that's being eliminated is not the only thing that the board said about why this combination wouldn't work. I almost think that's an aside or irrelevant at the end. What page of the opinion are we talking about here? Okay, let's see if I can find it. I believe it is. Let's see, I believe it starts on appendix page 32. And continues through 39 of the appendix. They say on 32 they're talking about, they're proposing to eliminate this step of pushing the control wire. They do start by talking about that. And where, in your view, did they get away from that? Okay. So, starting on page 35, they talk about patent owner, it says at the top, patent owner as supported by Dr. Viticunas. Raised doubts about how petitioners proposed modifications, etc. That portion. And then at the bottom of 36, it says importantly even assuming and talks about how petitioner should operate it as intended. So, the theory, and that continues on to 37. And continues on to 38. The theory that the board was considering was routine substitution. What you're saying is even if they made a mistake about eliminating the pushing step, that they gave other reasons as to why this combination wouldn't have been made. Yes, Your Honor, that is what I'm saying. And that those other reasons are supported by the testimony of Dr. Viticunas, our expert, and that's substantial evidence. So, that's an independent reason to affirm. Unless there are other questions. Your Honor, I'll yield back the time. Thank you, Your Honors. So, what about the last point? The last point is, Your Honors, I think as far as where in the final written decision the mistake on the board's part is reflected, it's captured really well in Appendix 34, where the board said at the top of the page, petitioner proposes eliminating the need to push forward the wire 19 and hook member approximately. That's absolutely wrong, and it is absolutely not what... Well, they cite it to the petition. I mean, this is based on their exact quotations from the petition. And then the board does move on to say that even... and address your reply argument. So, how would the fact that they address your initial point in the petition and dismiss it or find that it is insufficient and then go on to consider your reply argument, how does that make it that they don't understand what you were saying? A few things, Your Honor. Number one, that statement right there makes very clear they don't understand what we were saying because, Your Honor, raised the notion that they cited to the petition. They replied to your position in the reply is the point, and that was no longer your position. I mean, fair enough. So, that's not a response to the argument that you made in the reply. But isn't Judge O'Malley right that they went on and considered the reply argument and said it wasn't sufficient? She is right that they did go on to consider the reply argument, but what the board did is they only looked at that reply argument through the lens of its misunderstanding of how it misunderstood the combination. So, at each instance, when you look at the board's citation in reference to the reply argument, the board proceeds to disregard that evidence, not on its own merits, but instead based on what is in the petition. I'm not sure that I read that. How do you get that out? We could go literally step-by-step through here, but, for example, at appendix page 34, and I'm just going to highlight some examples here for your honor. Appendix page 34, the last paragraph on there, the board says, in its reply, petitioner attempts to salvage its contentions by making arguments not developed in the petition. Then later on, that last sentence, same page, says it is unnecessary only because petitioner contends in the petition. Again, focusing on the petition. Then the next page, page 35 of the appendix, the first sentence, the board makes a statement and then talks about particularly in light of the insufficient explanation provided by the petitioner in the petition. And then that same page, this is a great example, the board is quoting Dr. Nicosia's testimony, which you could put in the category of reply evidence. And then on the following page, page 36, your honor was referring to the board statement of Dr. Nicosia may have had ideas about how to combine the teachings. In that same sentence, the board says, as the petition is practically devoid of any analysis. Again, so it's acknowledging the reply evidence, but then disregarding it for... But then they also said that they simply credit the patent owner's expert over your expert. Don't they have the right to do that? They certainly have the right to do that, but not if it's a fundamental understanding. But my problem is I don't see that that discussion you just pointed us to is premised on anything to do with eliminating the step of pushing the control wire. Well, keep in mind... It seems to be a separate concern that the board has. Well, the board very clearly had a fundamental misunderstanding of pushing the control wire forward. So if you accept that, and you understand that everything kind of is viewed through that lens, that the board thought we were eliminating what it called an essential step, and then considered the reply evidence, but only through that lens of thinking that we were eliminating that step. And so that's why the board keeps coming back and rejecting the reply evidence based on what was in the petition. My time is up.